ENTERED ON DOCKET
8/31/99                PURSUANT

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO
-------------------------------
                                    :
Jose Antonio Lopez                  :
                                    :
     Plaintiff,                     :
                                    :      **MEMORANDUM DECISION**
v.                                  :      Civil No. 97-2296(JAF)(RJW)
                                    :
Premier Salon International,        :
Inc.,                               :
                                    :
     Defendant.                     :
                                    :
-------------------------------

## BACKGROUND

Jose Antonio Lopez ("Lopez") filed a Complaint claiming that Premier Salon International, Inc. ("Premier") discriminated again him based on sex in violation of Title VII and Puerto Rico Law 17 ("Law 17"). Specifically, Lopez alleged that he was sexually harassed by Maritza Lebron, an employee of Premier, and that Premier is liable for her conduct.

A jury trial commenced on April 9, 1999 and on April 13, 1999, the jury returned a verdict for plaintiff, finding Premier liable for the sexual harassment of its employee under both Title VII and Law 17. The jury awarded plaintiff $42,000 in compensatory damages and $23,000 in punitive damages.

Defendant subsequently filed a motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50,

alleging that the evidence was insufficient to support the jury's finding of liability. Plaintiff also filed a post-trial motion, seeking to alter or amend the judgment or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, alleging that the damages awarded plaintiff were inadequate. Furthermore, plaintiff requests that the Court double the compensatory damages awarded and order that he be reinstated pursuant to Law 17. For the reasons discussed below, defendant's motion is denied and plaintiff's motion is granted in part and denied in part.[1]

DISCUSSION

I. Defendant's Motion for Judgment Notwithstanding the Verdict

A district court may grant a motion for judgment notwithstanding the verdict when a reasonable person could only reach one conclusion based on the evidence. Conway v. Electro Switch Corp., 825 F.2d 593, 598 (1st Cir. 1987). In making this determination, the court may not "assess the credibility of the witnesses, evaluate the weight of the evidence or resolve conflicts in testimony, but rather must view all facts and

---

[1] Plaintiff also moved to strike from the docket defendant's opposition to plaintiff's motion to alter or amend the judgment or for a new trial. The Court determined to consider defendant's opposition and, to avoid prejudice, afforded plaintiff the opportunity to reply. Accordingly, plaintiff's motion to strike defendant's opposition is denied.

2

reasonable inferences therefrom in the light most favorable to the non-movant." Davet v. Maccarone, 973 F.2d 22, 29 (1st Cir. 1992)(citations omitted). "Neither the trial court's disagreement with the jury's verdict nor the fact that the district judge would have found otherwise in a bench trial, is a sufficient basis to displace a jury's verdict." Id. (citations omitted). "[R]ather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Conway, 825 F.2d at 599.

Defendant does not dispute that there was enough evidence for the jury to find that Lopez had been sexually harassed by Maritza Lebron. Nevertheless, defendant argues that the evidence was insufficient to find Premier liable for the sexual harassment because plaintiff failed to prove the necessary elements for employer liability, namely that Lebron was Lopez's supervisor.

On the issue of employer liability for supervisor harassment, the Supreme Court has stated, "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v.

3

City of Boca Raton, 118 S.Ct. 2275, 2292-93 (1998). However, if the discriminatory conduct does not result in tangible employment action, the employer may raise an affirmative defense. The defense is comprised of two components which must be proved by a preponderance of the evidence: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id. at 2293. Where, on the other hand, tangible employment action was taken and that action was taken for discriminatory reasons, this defense is unavailable. Id.

The Court finds that a reasonable jury could have found that Lebron was a supervisor with "immediate or successively higher authority" over Lopez as required under Faragher. Lopez testified unequivocally that Lebron was the assistant manager under Vicki Cruz while Lopez was employed at the salon, Tr. at 98, and Dameris Morales Colon, a co-worker, testified that Lebron was in charge when Cruz was not present. Tr. at 227.

This, however, does not end the matter since defendant argues in the alternative that it effectively rebutted any presumption of liability by proving that management adequately

4

responded when it learned of Lebron's conduct and that Lopez did not follow the proper procedures for filing a sexual harassment complaint. Based on the testimony elicited at trial, however, the jury may have refused to consider Premier's affirmative defense entirely. Lopez testified that Lebron and Cruz's objective in subjecting him to verbal and physical abuse was to induce him to quit. When he would not quit, Cruz fired him. Tr. at 168-69. If the jury credited Lopez's testimony, it could have found that Lebron's discriminatory conduct resulted in tangible employment action, in which case the affirmative defense would be unavailable.

Even if the jury did consider Premier's affirmative defense, it may have determined that Premier did not sustain its burden of proof. Lopez testified that he complained to Cruz, his manager, about Lebron's conduct and that Cruz told Lebron to leave Lopez alone. Defendant cites this testimony as proof that Premier took appropriate steps to end the harassment. However, Lopez also testified that Cruz was laughing when she reprimanded Lebron, behavior which Lopez interpreted as making fun of his complaints and condoning Lebron's behavior. Tr. at 107-08;154-55. The jury could have found that Cruz's reprimand did not constitute "reasonable care to prevent and correct" the sexual

harassment as required under the first prong of the affirmative defense.

Turning to the testimony relating to the second prong of the affirmative defense, both Lebron and Carlos Cabrera, Premier's general manager for Puerto Rico, stated that the salon had a policy against sexual harassment and that a toll free number for filing sexual harassment complaints was posted in the salon's storage area. Tr. at 277-78, 325. Defendant argues that since plaintiff did not call the number, he unreasonably failed to take advantage of the procedure put in place by the employer and, therefore, Premier cannot be held liable. However, Lebron also testified that under the policy, the employee is supposed to go to the manager and the manager is supposed to inform the owner of the complaint. Tr. at 278. There was no testimony that Cruz ever told Cabrera about Lopez's complaint. In fact, Lopez testified that he specifically asked Cruz to contact Cabrera, but that Cruz kept telling Lopez that Cabrera was busy. Tr. at 109-10.

In sum, there was sufficient evidence presented for the jury to conclude that Lopez's discharge was tangible employment action taken for discriminatory reasons or, in the alternative, that the employer did not take sufficient steps to end the

6

harassment and that Lopez did not unreasonably fail to take advantage of any complaint procedures available to him.[2] Therefore, defendant's motion for judgment notwithstanding the verdict is denied.[3]

II. Plaintiff's Motion to Amend or Alter the Judgment or for a New Trial

Plaintiff alleges that to let the jury's verdict stand

---

[2]Although neither party addressed the issue, there was sufficient evidence for the jury to find Premier liable for harassment by a co-worker even if plaintiff did not meet his burden of proof for harassment by a supervisor. The verdict sheet did not inquire whether the jury found that the harassing employee was a supervisor or a co-worker. It merely asked whether plaintiff had proved by a preponderance of the evidence that the defendant discriminated against plaintiff based on sex or created a hostile work environment in violation of Title VII. Since the jury was charged on employer liability for both supervisor and co-worker harassment, it could have found that Lebron was not a supervisor and yet still found Premier liable.

The prima facie case for the two kinds of harassment differs. Where the plaintiff is sexually harassed by a co-worker, an employer will be held liable where the employer or its agents or supervisory employees knew or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. 29 C.F.R. §1604.11(d)(1987); Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988). As discussed above, Lopez testified that he told Cruz about Lebron's conduct. He also testified that Cruz told Lebron to stop but did so while laughing and making fun of him. Moreover, Lopez stated that he tried to get in touch with Cabrera through Cruz but Cruz always said that Cabrera was busy. Based on Lopez's testimony alone, the jury could have found Premier liable for Lebron's conduct even if Lebron was merely a co-worker. After a review of the evidence, the Court cannot say that the outcome of the case is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.

[3] It is unclear from defendant's motion whether defendant also moves to set aside the verdict under Law 17, Puerto Rico's anti-sexual harassment statute. Assuming defendant does seek to set aside the verdict under both statutes, the result is the same. Under Law 17, an employer will be held liable for a supervisor's sexual harassment if the person committing the harassment acted in his position as the employer's agent or supervisor, regardless of whether the conduct was authorized or prohibited by the employer and regardless of whether the employer knew or should have known about the behavior. 29 L.P.R.A. § 155d. It is not necessary to prove that the person was plaintiff's immediate supervisor. Where the harassment is by a co-worker, the standard is the same as under federal law, namely that an employer will be liable if the employer or its agents or supervisors knew or should have been aware of such conduct unless the employer proves that it took immediate and appropriate action to correct the situation. 29 L.P.R.A. § 155e. Since there was sufficient evidence for the jury to find that Lebron was Lopez's supervisor or in the alternative that Premier effectively knew of the harassment and did not take immediate and appropriate action to correct the situation, the Court finds that the jury's verdict was not against the weight of the evidence.

7

with regard to damages would result in a clear error of law or manifest injustice. The jury, plaintiff contends, erroneously disregarded evidence of loss of earnings, pain and suffering and retaliation in awarding plaintiff compensatory damages in the amount of $42,000. Plaintiff, therefore, asks this Court to amend the jury's verdict and award plaintiff the sum of $561,200 or, in the alternative, grant a new trial on damages only.

As a general rule, "[a] federal court may grant a new trial because of an inadequate verdict, but it may not increase the damages above those awarded by a jury, either directly or by the use of an additur." 11 Wright, Miller and Kane, Federal Practice and Procedure § 2816 (1995); See also, Dimick v. Schiedt, 293 U.S. 474, 486-87 (1935)(holding that use of an additur is a violation of the Seventh Amendment); DePinto v. Provident Security Life Ins. Co. 323 F.2d 826, 838 (9th Cir. 1963)(extending the rationale for prohibiting use of an additur to an unconditional award of damages in excess of the jury's verdict which is agreed to by plaintiff but not by defendant). While there is no exception that the Court is aware of, to the prohibition against unconditionally increasing a jury's damages award, there are exceptions to the rule against additur. However, the Court finds it unnecessary to review these

exceptions since additur is generally employed as an alternative to granting a new trial based on the inadequacy of the verdict and a new trial is not warranted here. 11 Wright, Miller and Kane, supra. (Additur is the practice by which "if the trial court considers the verdict inadequate it may condition its denial of plaintiff's motion for a new trial on defendant's consent to the entry of judgment for a stated amount in excess of the verdict.").

In evaluating whether damages are inadequate, the First Circuit has stated, a jury verdict should be validated "if -- after scanning the evidence in the light most congenial to the nonmovant, -- the verdict does not exceed or fall below any rational appraisal or estimate of the damages that could be based on the evidence before the jury." Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988)(citations and quotations omitted). Based on the testimony presented, the Court cannot say that the damages awarded plaintiff were inadequate.

Plaintiff's evidence concerning damages consisted of his own testimony and that of his psychiatrist. Lopez testified that he has not worked since July 1996, when he was fired from Premier, explaining, "[i]t hasn't been the same . . . I can't practice." Tr. at 99. He stated that as a result of the

9

harassment and his subsequent discharge, he suffers from depression and has attempted suicide. Tr. 171, 187. Plaintiff's monthly salary as a hairstylist at Premier was $1,200. Tr. at 98.

Plaintiff's psychiatrist, Rafael Cruz Mena, testified that he first saw Lopez in October 1998, over two years after his discharge from Premier. He confirmed that Lopez suffered from anxiety and depression which he stated could be the result of the harassment Lopez suffered and his subsequent discharge. Tr. at 21, 56. However, because he did not meet Lopez until October 1998, Mena could not state whether Lopez suffered from anxiety and depression prior to Lopez's employment with the salon. Tr. at 55. The psychiatrist also did not know whether plaintiff could have worked after his discharge. Tr. at 48-49. He did testify, however, that he would not recommend that plaintiff return to work until he underwent prolonged psychiatric treatment. Tr. at 53.

Plaintiff claims that based on this testimony, he is entitled to $61,000 in back pay and front pay alone. While there was concrete evidence of lost wages in this amount, the jury was not required to award the full amount of back pay since it was entitled to reduce the award if it found that plaintiff

unreasonably failed to mitigate his damages. The jury could also have deducted from its award of back pay if it found that the damages were not directly caused by the discriminatory conduct.

Additionally, plaintiff argues that he should have received $250,000 for pain and suffering as well as $250,000 on his retaliation claim. For these types of damages, there is no mathematical formula to aid the jury in making its calculations. Moreover, there was no concrete evidence at trial of economic loss or stipulation between the parties as to the amount of damages. As the First Circuit has stated, "Translating legal damage into money damages -- especially in cases which involve few significant items of measurable economic loss -- is a matter peculiarly within a jury's ken." Id. at 37. Based on the above considerations, the Court cannot say that the verdict falls below a rational estimate of plaintiff's damages. As such, plaintiff's motion for a new trial or additur is denied.

Plaintiff has also moved to have his award of compensatory damages doubled and for reinstatement pursuant to Law 17, 29 L.P.R.A. § 155j. Under Law 17, "[a]ny person responsible for sexual harassment in employment as defined by sections 155-155l of this title shall incur civil liability . . . for a sum equal to double the amount of the damages that the

11

action has caused the employee . . . ." 29 L.P.R.A. § 155j. The Court is required by law to double plaintiff's damages. It may appear that doubling damages allows plaintiff to recover twice for the same loss since plaintiff was also awarded punitive damages. However, the First Circuit has stated, in dicta, that the doubling of damages under Law 100, which this Court finds is analogous to Law 17, is not punitive in nature and therefore, that doubling compensatory damages and awarding punitive damages is not duplicative. Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 725 (1st Cir. 1994). In Sanchez, the First Circuit held that even if the doubling of damages under Law 100 were punitive, the considerations that operate to bar multiple recoveries are inapplicable to punitive awards. Id. Consequently, this Court grants plaintiff's motion with respect to the doubling of compensatory damages.

The Court also grants that part of plaintiff's motion requesting reinstatement. Law 17 provides, "[i]n the judgment in civil actions filed under the above provisions, the court shall order the employer to hire, promote or reinstate the employee in his job and to cease and desist of the act in question." 29 L.P.R.A. § 155j. Therefore, the Court directs Premier to reinstate plaintiff in his former position as hairstylist and to

12

cease and desist the conduct that created a hostile work environment in violation of Puerto Rico Law 17.

CONCLUSION

For the foregoing reasons, defendant's motion is denied and plaintiff's motion is granted in part and denied in part.

Settle judgment on notice.

Dated:  New York, New York
        August 26, 1999

_____
              U.S.D.J.

13